IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALLY M. PERLOFF and NEIL PERLOFF : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> TRANSAMERICA LIFE INSURANCE : <br> COMPANY, : <br> Defendant. : | CIVIL ACTION NO. 18-4808 |

MEMORANDUM

Rufe, J.                                                                            August 13, 2019

Plaintiff Sally Perloff, the owner of a life insurance policy, and Plaintiff Neil Perloff, her husband and the insured, filed suit against Defendant Transamerica Life Insurance Company ("Transamerica"). Both Plaintiffs asserted claims of invasion of privacy and negligent infliction of emotional distress ("NIED claim"). Sally Perloff individually asserted claims of breach of contract and breach of fiduciary duty, and Neil Perloff individually brought a claim for loss of consortium. Transamerica has moved to dismiss for failure to state a claim. For the reasons that follow, the motion will be granted in part and denied in part.

I.     BACKGROUND

The following facts alleged in the Complaint are assumed to be true for purposes of the motion to dismiss. Sally Perloff owned a life insurance policy for her husband Neil Perloff, which was issued by Transamerica, an Iowa-based corporation that conducts business in Pennsylvania.[1] In March 2017, Plaintiffs sold their home in Fort Washington, Pennsylvania and moved to Boynton Beach, Florida.[2] After moving, they notified Transamerica of their new

---

[1] Compl. ¶ 16.

[2] *Id.* ¶ 24.

address.³ On July 17, 2017, Transamerica mailed a "lapse notice" for failure to pay the premiums on the policy to the Plaintiffs' son Brandon Perloff, and the same notice was also sent to Plaintiffs' home in Florida.⁴ Plaintiffs contend that their son was not previously aware of the policy, and they were concerned that after receiving the mailing from Transamerica, he would share that information with his three brothers (all four siblings were alternate beneficiaries of the policy).⁵ Plaintiffs were upset about the potential for their family and friends to learn about the lapse in payments, and were worried that if they were to make any changes to the policy now, it would cause "irreparable" family conflict.⁶

Plaintiffs initially filed suit in Philadelphia Court of Common Pleas. Transamerica removed the case to this Court, based on diversity jurisdiction, and has now moved to dismiss for failure to state any claims.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"⁷ and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.⁸ The question is not whether the plaintiff ultimately will prevail, but whether the complaint is "sufficient to cross the federal court's threshold."⁹

---

³ *Id.* ¶ 25.

⁴ *Id.* ¶¶ 20, 23.

⁵ *Id.* ¶¶ 27-28, 33.

⁶ *Id.* ¶¶ 28-34.

⁷ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

⁸ *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

⁹ *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted).

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[10] Although the court must draw all reasonable inferences from the allegations in favor of the plaintiff,[11] it "need not accept as true unsupported conclusions and unwarranted inferences,"[12] or the plaintiff's bald assertions or legal conclusions.[13]

### III. DISCUSSION[14]

#### A. Breach of Contract

Plaintiff Sally Perloff brings a breach of contract claim against Transamerica based on the Privacy Statement that Transamerica allegedly provided with the policy.[15] Transamerica

---

[10] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

[11] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

[12] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir. 1998)) (internal quotation marks omitted).

[13] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

[14] Initially, the gist of the action doctrine bars at least the claims of breach of fiduciary duty and NIED, as to Sally Perloff, because these two claims are premised on Transamerica's alleged duty to maintain her privacy arising from the contract she held with Transamerica. The gist of the action doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619–20 (E.D. Pa. 2010) (citation omitted). "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Id.* at 620. Plaintiffs' claims of breach of fiduciary duty and NIED are premised on a duty of confidentiality arising from Plaintiffs' relationship to Transamerica; yet, as to Sally Perloff, such a duty is based on, and is identical to, the purported contractual duty arising from the Privacy Statement, and thus, Sally Perloff cannot raise this claim in tort.

Regardless, to the extent Plaintiffs contend that Transamerica had duties to either or both of them stemming from a "larger social policy," as opposed to the contract, this position lacks merit, and Plaintiffs' claims of NIED and breach of fiduciary duty fail for the reasons stated in this Memorandum. *The Brickman Grp., Ltd. V. CGU Ins. Co.*, 865 A.2d 918, 927 (Pa. Super. Ct. 2005) ("[A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied by the law of torts.").

[15] Plaintiffs appear to concede that Neil Perloff is not a party to agreement between Sally Perloff and Defendant, and thus this claim is brought only by Sally Perloff. Pls.' Opp. [Doc. No. 11] at 8.

argues that the Privacy Statement is not sufficiently definite to form a contract, but was solely a "general statement[]" or "unilateral corporate statement[]."[16] Transamerica further contends that Sally Perloff "has failed to point to any provision of the Policy that Transamerica breached."[17]

While widely published, vague corporate mission statements are not sufficient to support a breach of contract action;[18] policy statements that include specific and definite promises may be sufficient to support such an action.[19] To that end, Plaintiff Sally Perloff has alleged that the contents of the Privacy Statement "were included in, and made an integral part [] of the Policy or Contract of Insurance either expressly or by implication,"[20] and that Transamerica, through its Privacy Statement, "promised and assured" that it would maintain the privacy and confidentiality of its Policyowners and Insureds.[21] The Court does not determine at this time whether the disclosure at issue potentially violated the Privacy Statement, or whether that Statement was part of the contract, only that Plaintiff Sally Perloff has alleged that Transamerica breached its obligations of privacy and confidentiality included in this Privacy Statement. Transamerica's motion to dismiss this claim will be denied at this time.[22]

---

[16] Def.'s Mot. to Dismiss [Doc. No. 4] at 5 n. 3.

[17] *Id.* at 5.

[18] *Minehan v. United States*, 75 Fed. Cl. 249, 260 (Fed. Cl. 2007) (finding that the IRS's mission statement, which was "widely distributed," did "not evince a clear intent to contract on the part of the federal government," but instead was "aspirational," and made "no specific promise or offer which could be deemed the basis for a contract").

[19] *Vurimindi v. Fuqua Sch. of Bus.*, 435 Fed. App'x 129, 133 (3d Cir. 2011) ("guidelines and policies can include specific promises on which to base a cause of action"). *See also David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016).

[20] Compl. ¶ 44.

[21] *Id.* ¶ 45.

[22] No party has raised or discussed the issue of damages that may be alleged to flow from the breach of contract claim, and the Court will make no determinations, at this time, as to the viability of any such theory of damages.

4

## B. Invasion of Privacy

Pennsylvania courts[23] have adopted section 652D of the Restatement (Second) of Torts, titled "Publicity Given to Private Life," the elements of which are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public."[24] To satisfy the "publicity" element, a matter must be made public through communication to either the general public or enough people that the matter is "substantially certain" to become public knowledge.[25] Pennsylvania courts have found that disclosure of private facts to one person[26] or a small group of people does not meet this standard.[27] Here, the information at issue was disclosed only to one person, and Plaintiffs' belief that "current technological advances" and their son's "extreme extroversion" might result in the disclosure of the information to others, does not make the information "substantially certain" to become public knowledge.[28]

Plaintiffs also urge the Court to adopt a "special relationship" exception to the publicity requirement, in which disclosure made to a small group of people with a special relationship to a plaintiff constitutes publicity. However, the Pennsylvania Supreme Court has expressly chosen not to adopt the exception.[29] Thus, Plaintiffs' invasion of privacy claim will be dismissed with prejudice.

---

[23] The parties appear to agree that Pennsylvania law applies, as Plaintiffs lived in Pennsylvania when the contract was formed, and the lapse notice was sent to Plaintiffs' son in Pennsylvania.

[24] *Harris by Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984).

[25] Restatement (Second) of Torts § 652D, Comment a.

[26] *Harris*, 483 A.2d at 1384.

[27] *Vogel v. W. T. Grant Co.*, 327 A.2d 133, 137–38 (Pa. 1974).

[28] Pls.' Opp. [Doc. No. 11] at 20-21.

[29] *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 380 n. 6 (Pa. 2009) ("Other state courts have held that the publicity element of the tort of public disclosure of private facts may be satisfied where the information is released to a small number of persons who have a special relationship with the plaintiff, including fellow employees or

### C. NIED

As Plaintiffs appear to concede, the three traditional theories for establishing NIED—where one (1) suffers a physical injury which causes emotional distress; (2) is in the "zone of danger"; or (3) witnesses an accident causing serious injury to a close family member—are inapplicable here. Some intermediate Pennsylvania courts have held that a claim of NIED may arise from a breach of a duty in a special relationship "where it is foreseeable that [such a breach] would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress."[30] "It is a close question whether the Pennsylvania Supreme Court will ever rule that a claim for NIED may be based on the breach of a special relationship."[31] Even assuming, for purposes of the motion to dismiss, that this type of claim is recognized under Pennsylvania law, it would not apply to the circumstances of this case.

The type of relationship on which such an NIED claim may be premised occurs where a defendant has assumed an express or implied duty that encompasses a plaintiff's emotional well-being, such as a doctor and patient, or a decedent's family and a funeral home.[32] The relationship between an insurer and a beneficiary or insured person does not encompass the insured person's emotional well-being.[33] Plaintiffs argue that an insurance contract is "personal in nature and … so coupled with matters of mental concern and solicitude, or with the sensibilities of the policyowner for whom the duty is owed, that a breach of that duty will necessarily or reasonably

---

family members. As previously indicated, however, under prevailing Pennsylvania law, such disclosures to a small number of persons do not constitute publicity.") (citations and quotations omitted).

[30] *Toney v. Chester County Hosp.*, 36 A.3d 83, 84 (Pa. 2011).

[31] *Hershman v. Muhlenberg College*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014).

[32] *Toney*, 36 A.3d at 92.

[33] *See Blease v. GEICO Casualty Co.*, Civ. No. 18-3893, 2019 WL 1468786 (E.D. Pa. Apr. 3, 2019) ("separate claims sounding in tort are not appropriate when the underlying dispute involves a contract between an insurer and insured") (citing *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 534 (M.D. Pa. 2007)).

result in mental distress[.]"[34] But it is not enough to allege that the relationship involved personal information; it must be the type of relationship where the plaintiff has put his emotional well-being in the defendant's hands. The Court will not extend this limited concept to encompass the relationship between insurer and insured. Thus, the Plaintiffs' claim of NIED will be dismissed with prejudice.

### D. Breach of Fiduciary Duty

Sally Perloff also asserts that Transamerica breached a fiduciary duty arising from their contractual relationship. In response, Transamerica argues that Sally Perloff has not adequately alleged the existence of a fiduciary relationship.

In Pennsylvania, fiduciary duties exist as a matter of law in relationships that involve a "unique degree of trust and confidence," such that "one party [may] gain easy access to the property or other valuable resources of the other."[35] That does not appear to be the case here. Where fiduciary duties do not exist as a matter of law, they may only arise under circumstances which create *confidential* (or fiduciary) relationships,[36] such as when one party can exert undue influence over the other, or where one party "cedes decision-making control to the other party."[37] Sally Perloff has not alleged undue influence, nor has she alleged that Transamerica had substantial decision-making control over her affairs. Instead, she argues that her relationship

---

[34] Pls.' Opp. [Doc. No. 11] at 30.

[35] *Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811, 820 (Pa. 2017). Examples of such relationships include "[p]rincipal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners." *Id.* Similarly, a physician has a fiduciary relationship with their patient that encompasses a duty to protect the patient's privacy. *Alexander v. Knight*, 177 A.2d 142, 146 (Pa. Super. Ct. 1962),

[36] *Yenchi*, 161 A.3d at 820 ("Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do … We have explained that a confidential relationship appears when the circumstances make it certain the parties do not deal on equal terms…") (citation and internal quotations omitted).

[37] *Id.* at 823.

with Transamerica was confidential because the company "held itself out as guard keeper of its policyowner's private personal and sensitive information" by including "affirmative promises and representations about protecting the Plaintiff's privacy."[38] Such promises do not give rise to a fiduciary duty to protect her privacy, and thus the claim of breach of fiduciary duty will be dismissed with prejudice.

### E. Loss of Consortium

Neil Perloff brought a claim of loss of consortium based on the alleged injury to his wife. Loss of consortium claims are derivative in nature and will be dismissed where the underlying claims do not survive. Thus, as Transamerica correctly contends, Neil Perloff's loss of consortium claims deriving from Sally Perloff's tort claims should be dismissed, as the underlying tort claims fail. Additionally, although the breach of contract claim survives, a loss of consortium claim may only be based on a breach of contract where the spouse asserting loss of consortium is a party to the contract, and here, Plaintiffs have agreed that Neil Perloff is not a party to the policy with Transamerica.[39] Thus, Neil Perloff's loss of consortium claim will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Transamerica's motion to dismiss will be granted in part and denied in part. Plaintiff Sally Perloff's claim for breach of contract may proceed, and all other claims will be dismissed. An appropriate Order follows.

---

[38] Pls.' Opp. [Doc. No. 11] at 34-35.

[39] *Kase v. Wiseman*, No. CIV. A. 93–3076, 1993 WL 409862, at *4 n. 14 (E.D. Pa. Oct. 12, 1993) ("[T]here is no recovery for loss of consortium based on breach of contract, unless the spouse asserting loss of consortium is also a party to the contract." (citing *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437–38 (3d Cir. 1986)); *Rodgers v. Prudential Ins. Co. of America*, 803 F. Supp. 1024, 1032 (M.D. Pa. 1992); *see also Romero v. Allstate*, Civ. No. 16–4037, 2017 WL 895593, at *2 n. 3 (E.D. Pa. Mar. 7, 2017) ("Liability for damages that result from breach of contract must generally be restricted to damages suffered by parties to the contract.").